H. R. Spinner Corporation v. Commissioner.
H. R. Spinner Corp. v. Commissioner
Docket No. 483-69.
United States Tax Court
T.C. Memo 1970-99; 1970 Tax Ct. Memo LEXIS 262; 29 T.C.M. (CCH) 462; T.C.M. (RIA) 70099; April 28, 1970, Filed C. W. Halverson and Donald H. Bond, 415 North Third St., P.O. Box 526, Yakima, Wash., for the petitioner. Gary C. Randall, for the respondent. DAWSON
Memorandum Opinion DAWSON, Judge: Respondent determined deficiencies in petitioner's Federal income taxes for the fiscal years ended March 31, 1964, and March 31, 1965, in the amounts of $32,608.71 and $44,368.33, respectively. The only issues for decision are (1) whether certain notes issued by petitioner to its stockholders constitute a second class of stock within the meaning of section 1371(a), Internal Revenue Code of 1954, [1] and (2) if there is a second class of stock, whether compensation agreements between petitioner's employees and petitioner's predecessor corporation *263 are still in effect. All of the facts have been stipulated. The stipulation of facts and supplemental stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. The pertinent facts are summarized below. H. R. Spinner Corporation (hereinafter called petitioner) is a corporation organized July 25, 1961, under the laws of the State of Washington. Its principal office and chief place of business at the time of filing its petition herein was Yakima, Washington. Petitioner filed its Federal corporation income tax returns for the fiscal years ended March 31, 1964, and March 31, 1965, with the district director of internal revenue, Tacoma, Washington. Petitioner's business is selling boxes, cartons and other packing supplies to fruit growers and packers in the area surrounding Yakima. The business began as a sole proprietorship in 1918 and later expanded into a partnership. In 1953 the partners concluded that they could avoid personal liability by incorporating, and that the law would permit them to reduce the impact of the *264 additional corporate tax by means of a bonus plan which would drain off two-thirds of before-tax profits. The success of the business depended in large part on the personal ability of its key sales employees. H. R. Spinner, Inc., was incorporated July 9, 1953, with three classes of stock: 500 Preferred
$50,000
250 Class A Common (voting)
25,000
250 Class B Common (non-voting) 25,000
Total capital
$100,000
H. R. Spinner and his wife received all of the preferred stock. The common stock was allocated 49 percent to Merritt Bloxom, Jr. (Spinner's son-in-law), 2 percent to H. R. Spinner, and 49 percent to others. Having experienced earlier tax difficulties, and anticipating the possibility of others, the partners provided for the recapture of the business name, goodwill, and leased premises under certain circumstances. The formation of H. R. Spinner, Inc., was conditioned on the payment by it of base rental and salaries plus bonus rentals and salaries. The salary arrangements were:
Base salaries: Merritt Bloxom, Jr.
$16,000
Don Weller
8,400
Ken Yeaman
9,000
Vic Bassani
9,000
Bonus salaries: Merritt Bloxom, Jr.
23% tentative net income
Don Weller
10% tentative net income
Ken Yeaman
10% tentative net income
Vic Bassani
10% tentative net income
Bonus rental: H. R. Spinner
10% tentative net income
*265 Tentative net income equaled gross income less expenses (including base salaries and rentals) and 8 percent on investment. If these conditions were challenged, the business name, goodwill, and building would be returned to the partners. In 1961 respondent began an audit of the returns of H. R. Spinner, Inc., for the years ended March 31, 1958, March 31, 1959, and March 31, 1960. Eventually respondent determined tax liabilities approaching $150,000 in total on the ground that 464 the bonus plan was excessive. H. R. Spinner, Inc., faced the possibility of bankruptcy. The going business was returned to H. R. Spinner and Merritt Bloxom, Jr., successors in interest to the partnership. Spinner, Bloxom, and key employees of H. R. Spinner, Inc., formed the petitioner, H. R. Spinner Corporation, with authorized capital stock of $50,000 of one class. Paid in capital amounted to $25,000, as follows: Amount
Shares
Interest
Merritt Bloxom, Jr
$10,000
100
40%
Don Weller
4,000
40
16%
Ken Yeaman
4,000
40
16%
Vic Bassani
4,000
40
16%
H. R. Spinner
3,000
30
12%
The nature and size of the business required capital in excess of $25,000, and it *266 was the intention of the shareholders to increase their investment to $125,000 as soon as possible, retaining their proportionate interests. For the moment, however, their capital was tied up in H. R. Spinner, Inc.
Petitioner proceeded to arrange the financing required to continue the business. On July 28, 1961, it established a line of credit with the Bank of Yakima in the amount of $200,000. At the same time its shareholders executed continuing guarantees to the Bank of Yakima totaling $201,000. These guarantees provided that the indebtedness of petitioner to each guarantor was subordinated to the indebteness of petitioner to the Bank of Yakima. Petitioner's borrowing from the bank never exceeded $75,000, and no loans were obtained or outstanding from January 1964 through March 1965. Petitioner also borrowed from H. R. Spinner, Inc. at current bank interest rate, issuing notes to evidence the loans. It made a charge for collecting the accounts receivable of H. R. Spinner, Inc., and sold that company's inventories on a consignment basis. By the beginning of March 1965, petitioner's total liabilities to H. R. Spinner, Inc., including rent, were $247,057.35. At the same time, H. *267 R. Spinner, Inc.'s liabilities to petitioner totaled $80,569.13. The net balance of $166,488.22, plus interest, brought a total of $171,081.21 owing from petitioner to H. R. Spinner, Inc. This amount plus the depreciated value of the building and equipment acquired by petitioner from H. R. Spinner, Inc., for $68,168.80, less $6,230.01 to Bloxom as trustee and $20 interest, established the $233,000 equity of the shareholders of H. R. Spinner, Inc., as of March 31, 1964. From the time petitioner was formed, H. R. Spinner, Inc., no longer carried on any active business functions. The shareholders of H. R. Spinner, Inc., met August 19, 1963, to consider liquidation. On March 10, 1964, the stockholders were formally advised as to the outcome of the tax litigation (generally favorable to them) and received a proposal for distribution of the assets. At a meeting on March 25, 1964, the stockholders resolved to liquidate H. R. Spinner, Inc. It was agreed that Bloxom should act as liquidating trustee, that the remaining depreciable assets should be sold at book value to petitioner, and that the petitioner would "assume the obligations to the shareholders upon the retirement of the stock as *268 a distribution in kind." At the time of liquidation the shares of H. R. Spinner, Inc., were held as follows: A
B
8% Pfd.
Mr. H. R. Spinner
10
250
Mrs. H. R. Spinner
250
Merritt Bloxom, Jr
127.5
Mrs. M. Bloxom, Jr
127.5
Victor Bassani
37.5
40.5
Don Weller
37.5
41
Ken Yeaman 37.5
41
250
250
500
By March 31, 1964, all of this stock had been surrendered for cancellation. In return the shareholders received promissory notes from petitioner, as follows: 6% Demand
6% Term
Guaranteed8% Term
Mr. & Mrs. Spinner
$50,000
Merrie Bloxom, Jr
$10,665
$36,000
Mrs. M. Bloxom, Jr
14,325
36,000
Victor Bassani
5,548
23,000
Don Weller
5,731
23,000
Ken Yeaman 5,731
23,000
$42,000
$141,000
$50,000 Each was a standard form promissory note, with a schedule for payment, and provisions for acceleration and payment of attorney fees upon default. Interest and principal were paid when due. The demand notes to Bassani, Weller and Yeaman were paid so that they could pay their income taxes. Petitioner also paid Mrs. Bloxom's demand 465 note. The notes were physically delivered on August 6, 1964. *269 In March 1965 the paid-in capital of petitioner was increased by $100,000 to $125,000. The addition was made in proportion to the original shareholdings. Merritt Bloxom, Jr., added $40,000 by canceling his $36,000 note and crediting $4,000 on his demand note. Weller, Bassani and Yeaman each contributed $16,000 by surrendering their $23,000 notes for similar $7,000 notes. H. R. Spinner contributed $12,000. On June 16, 1965, H. R. Spinner died and Merritt Bloxom, Jr., acquired his 12 percent interest in petitioner. In January 1967, petitioner increased its authorized capital stock to $250,000. In March 1967, issued capital stock was increased to $175,000 with proportionate interests remaining constant. The $100,000 paid-in surplus was transferred to capital stock, and the shareholders contributed another $50,000, proportionately. Weller, Bassani and Yeaman each canceled their $7,000 notes and added $1,000 in cash. Bloxom paid $26,000. The parties have agreed that all of the notes, except the 6 percent, 20-year notes to Merritt Bloxom, Bassani, Weller, and Yeaman (totaling $105,000), represented bona fide debt. But, as to the remaining notes, respondent contends that they represent *270 equity investment, and are therefore a second class of stock within the meaning of section 1371(a) and the regulations promulgated thereunder. The briefs of the parties in this case are directed primarily to consideration of the classic debt-equity issue. Such arguments, however, are unnecessary to the disposition of this case. Petitioner's brief, prepared prior to our Court reviewed opinion in James L. Stinnett, 54 T.C. 221 (Feb. 11, 1970), anticipated and forecast our reasoning in that case. We held there that ordinary debt instruments, held disproportionately by the shareholders of a thinly-capitalized corporation, did not constitute a second class of stock within the meaning of section 1371(a). Our opinion in the Stinnett case controls this case. We see no basis for distinguishing it. Accordingly, we hold that the notes in controversy in the instant case, whether regarded as "debt" or as "equity," did not give rise to more than one class of stock. Petitioner's election to be taxed as a small business corporation was therefore valid for the fiscal years ended March 31, 1964, and *271 March 31, 1965. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩